# Firestine *v.* Philadelphia & Reading Railway Company, Appellant.

*Negligence—Railroads—Grade crossing—Signals—Evidence.*

1. In a personal injuries case where the issue turns on whether signals were given by an express train passing a grade crossing at a high rate of speed, there is sufficient evidence to carry the case to the jury where two witnesses for the plaintiff, one an experienced trainman, testify positively that their attention was fixed upon the train as it passed the crossing, and that no signal by whistle or bell was given; and this is the case although all of the trainmen testify that signals were sounded.

*Negligence—Railway—Infant—Damages.*

2. In a suit against a railroad to recover damages for personal injuries to a boy eight or nine years old where a witness for the plaintiff testifies without objection in regard to the opportunity for labor and wages of boys in the vicinity, such testimony will not be stricken out, after the witness has been subjected to an extended cross-examination on the subject.

3. Such evidence is in itself not improper where the age, occupation, and condition in life of the father and mother are shown, and also the age, state of health and physical and mental capacity of the boy.

Argued Oct. 27, 1913. Appeal, No. 246, Oct. T., 1912, by defendant, from judgment of C. P. Lebanon Co., March T., 1911, No. 48, on verdict for plaintiff in case of Stephen Firestine and Permilla Firestine, his wife, v. Philadelphia & Reading Railway Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for injuries to a boy eight or nine years old. Before HENRY, P. J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,500. Defendant appealed.

*Errors assigned* were refusal of binding instructions for defendant and refusal to strike out the testimony of Morris F. High.

*Charles H. Killinger,* for appellant, cited as to signals: Longenecker v. Penna. R. R. Co., 105 Pa. 328; Urias v. Penna. R. R. Co., 152 Pa. 326; Keiser v. R. R., 212 Pa. 409; Daubert v. R. R., 199 Pa. 345; Haverstick v. R. R. Co., 171 Pa. 101; Quigley v. Canal Co., 142 Pa. 388; Knox v. Ry. Co., 202 Pa. 504; Winterbottom v. R. R. Co., 217 Pa. 574; Anspach v. Ry. Co., 225 Pa. 528.

Cited as to damages: Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185; Peters v. R. R. Co., 225 Pa. 307; McCleary v. Rys. Co., 47 Pa. Superior Ct. 366.

*Eugene D. Siegrist,* for appellee, cited as to signals: Cromley v. R. R. Co., 211 Pa. 429; Kelly v. Traction Co., 204 Pa. 623; Hess v. Williamsport, etc., R. R. Co., 181 Pa. 492; Clarke v. R. R. Co., 27 Pa. Superior Ct. 251; Daubert v. R. R. Co., 199 Pa. 345; Rottmund v. R. R. Co., 225 Pa. 410.

Cited as to damages: Hoon v. Traction Co., 204 Pa. 369; Hannum v. Pownall, 187 Pa. 292; Montgomery v. Cunningham, 104 Pa. 349; Lowery v. Robinson, 141 Pa. 189; McCleary v. Rys. Co., 47 Pa. Superior Ct. 366; Peters v. R. R. Co., 225 Pa. 307.

OPINION BY HENDERSON, J., February 20, 1914:

The plaintiff's son, a boy between eight and nine years of age, was killed by a west-bound passenger train on the defendant's road at a highway crossing about a mile east of the station in the city of Lebanon. The boy and his sister, about thirteen years of age, were going from the south side to the north side of the railroad. There were two main tracks, one used for east-bound and the other, west-bound business. A long freight train was moving eastwardly on the south track. As soon as it had passed the crossing the children started to go over the tracks. The boy was a little in advance. As he got to the west-bound track he was struck by the train and killed. His sister discovered the approach of the train in time to escape injury. The locality was a thickly settled district and the crossing much used by pedestrians and persons in vehicles. The plaintiff's evidence showed that the train was moving at a speed of fifty or fifty-five miles an hour, and the evidence for the defense, that its speed was from forty to forty-five miles an hour. The regular schedule time of the train was fifty-five miles an hour. None of the employees on the train saw the boy or were aware of the accident until the train reached the city of Harrisburg, about thirty miles west of Lebanon, although the train made a regular stop at Lebanon. The negligence complained

of was that such notice was not given of the approach
of the train to the crossing as was required. The duty
of the company to give adequate warning when ap-
proaching a crossing is not doubtful, and this duty is
proportionate to the speed of the train: Childs v. Penna.
R. R. Co., 150 Pa. 73; Laib v. Penna. R. R. Co., 180
Pa. 503. The evidence offered was contradicted by the
defendant's employees in charge of the train and the ap-
pellant contends that there was not sufficient evidence
of the default alleged to justify the submission of the
case to the jury. Three witnesses were called by the
plaintiffs to testify that signals were not given of the com-
ing of the train. One of these was the sister of the
boy and the others were residents of the immediate
neighborhood. It is said of this evidence by the ap-
pellant that it was negative and not sufficient to raise
an issue of fact, and reference is made to Urias v. Penna.
R. R. Co., 152 Pa. 326; Knox v. P. & R. Ry. Co., 202
Pa. 504; Anspach v. P. & R. Ry. Co., 225 Pa. 528,
and other cases bearing on the same question in support
of the position taken. The testimony is negative in a
sense, for it denies the presumption of care and the
affirmative evidence introduced to show that the whistle
was sounded and the bell rung as warnings for the crossing.
It was not negative, however, in the sense that the wit-
nesses only did not hear the whistle or bell. It affirms
the fact that there was a failure to give the necessary
warning. Edward Young, one of the witnesses referred
to, was about 500 feet from the crossing; he was familiar
with the management of trains having had experience
as a trainman and was looking at the train as it came
toward the crossing; he observed the time on which
it was running and estimated its speed at forty-five
or fifty miles an hour; he saw the freight train pass;
his attention was immediately called to the accident.
When asked whether the bell or whistle was sounded he
said that he did not hear it and certainly would have
heard it if the signal had been given; that he would

have to swear that no signal was given. George Fry, another witness, was standing at his kitchen door about 350 feet from the crossing. His attention was directed toward the train and he was "looking right out towards it." He did not hear any warning signal of the train's approach and testified that he would have heard it if it had been given. The boy's sister testified that she did not hear any warning, but her testimony did not show that she was looking at the train or that she was in a situation to observe the signals. A careful examination satisfies us that the evidence was competent and sufficient to take the case to the jury. It is true the testimony of the engineer, fireman, conductor, brakeman, baggageman, Pullman porter and another witness was that warning was given. The conductor heard the bell ringing but did not notice the whistle; the porter heard the whistle several times; the fireman testified that the engineer sounded the whistle twice; the engineer said that he blew the whistle three times. There was a discrepancy in the testimony of the defendant's witnesses which tended to weaken its force and when the fact is taken into consideration that their attention was not brought to the subject of the signals for that crossing until after they heard in Harrisburg of the accident a jury would naturally have more or less doubt in regard to the accuracy of the testimony for it appears in the defendant's evidence that many signals were given by the engineer at the crossings over which the train passed in its course from Jersey City to Harrisburg. It was important to show that the train signal was given at a sufficient distance from the crossing to be a warning to persons about to cross the track. Three, at least, of the witnesses did not definitely fix the place at which the signals were given, although this was a matter of consequence because of the high speed of the train and the brief opportunity afforded to pedestrians to keep out of its way. The evidence for the defendant is not so overwhelming that no real

controversy is raised, and where the jury could not find for the plaintiff without a capricious disregard of apparently truthful testimony, probable in itself and not at variance with any admitted or proved facts: Cromley v. Penna. R. R. Co., 211 Pa. 429; Daubert v. R. R. Co., 199 Pa. 345; Haverstick v. Penna. R. R. Co., 171 Pa. 101; Rottumund v. Penna. R. R. Co., 225 Pa. 410; Winterbottom v. R. R. Co., 217 Pa. 574.

Exception is taken to the refusal of the court to strike out the testimony of one of the plaintiff's witnesses, Morris F. High, who testified in regard to the opportunity for labor and the wages of boys in the vicinity in which the plaintiff lived. The testimony was received without objection and the defendant engaged in an extended cross-examination and only after the value of the witnesses' evidence was ascertained was the motion to strike out made. Under similar circumstances in Hannum v. Pownall, 187 Pa. 292, the court said: "Having allowed the unresponsive answer to remain without objection, and having taken the chance in cross-examination of developing something favorable to his contention, the defendant has no standing to object that the testimony was improperly admitted," but neither that nor the testimony of Stephen Firestine was prejudicial to the defendant. The age, occupation, and condition in life of the father and mother were disclosed as were also the age, state of health and physical and mental capacity of the boy. Without evidence as to opportunities for labor the jury could have applied to the case the results of their observation and experience as members of the community familiar with subjects well known by people generally. The evidence admitted merely brought to the attention of the jury the fact that in that neighborhood large opportunity was afforded for the employment of minor children. The jury was cautioned to take into consideration and make due allowance for the expense to which the plaintiffs would be subjected in educating and caring

for their boy during his minority and the verdict shows that an extravagant view of the loss they sustained was not entertained by the jury. In Hoon v. Traction Co., 204 Pa. 369, the evidence was held sufficient to sustain a verdict of a slightly larger amount where the age and physical and mental condition of the child and the circumstances · in life of its parents were shown. If without any evidence as to what wages could be earned such a verdict is sustainable it is not apparent that the defendant has been prejudiced in the present case.

The judgment is affirmed.