## Gallagher, Appellant, *v.* Frederick.

Argued November 27, 1950. Before Drew, C. J., Stearne, Jones, Ladner and Chidsey, JJ.

*Laurence H. Eldredge,* with him *I. Sidney Sherwin* and *Morris J. Winokur,* for appellants.

*Daniel J. McCauley, Jr.,* for appellees.

Opinion by Mr. Justice Jones, January 2, 1951:

This action in trespass was brought by the father of the minor plaintiff in the latter's behalf, as his natural guardian, and in the father's own right to recover damages for injuries sustained by the minor when he was burned by flames from a bonfire on a lot of ground owned by the defendants, husband and wife. At the close of the plaintiffs' case, the learned

trial judge, on motion of defendants' counsel, entered a compulsory nonsuit which the court en banc later refused to take off. From the judgments entered for the defendants, the father brought these two appeals in his respective capacities. The basis assigned by the court below for its action was the failure of the plaintiffs to prove negligence on the part of the defendants as the proximate cause of the injury.

The following are the material facts when the evidence and the reasonable inferences are taken in the light most favorable to the plaintiffs. The defendants bought a vacant lot in the center of a city block in the Kensington section of Philadelphia. It was 184 feet by 51 feet, 9 inches, in size, and was situated just around the corner from the defendants' dwelling and across the street from the plaintiffs' home. The surrounding area was densely built up with dwellings, factories and mills. The defendants obtained possession of the lot on August 23, 1946, at which time it was being kept in order by some of the parents of the neighborhood in a clean and safe condition so as to afford an open playground for the children of the community. After acquiring the property, the husband defendant put upon it a large amount of charred lumber which he had salvaged from a building in the neighborhood that had been burned, large chunks of broken-up cement flooring from a nearby social club that he was remodeling and several piles of cinders and other refuse. He had in mind improving the lot by erecting thereon a number of garages for the storage of automobiles, the whole project to be enclosed by a cinder block wall. Several of the witnesses referred to the materials on the lot as debris which is not a wholly inapt description judging from the pictures of the *locus in quo* offered in evidence. However, that the owners intended to use the materials for building purposes is unquestioned.

After the defendants' acquisition of the property, the children of the neighborhood, ranging in ages from approximately three up to fifteen years, continued to come there as a matter of course; they played among the debris, dug holes and frequently built fires using bits of the charred lumber for the purpose. From the testimony, the jury could have found that fires were made daily; the defendants' knowledge of *that* condition was constructive as the owners and users of the lot resident around the corner. Complaints had been made to the defendant husband that children were getting hurt on the lot but, so far as the record discloses, such complaints were confined to the physical condition of the materials which the defendant husband had placed upon the lot.

About 12:30 o'clock Sunday noon, October 6, 1946, the minor plaintiff, then two years and eleven months old, went out of his home, crossed over the street to the lot and there joined several other children who were playing on and around a pile of broken concrete at the base of which at one end they had built a small bonfire. The other children, among them a brother of the minor plaintiff, were a little older than he, at least two of them being around six years of age. A few minutes later the other children moved off a little distance from the fire, leaving the minor plaintiff on the pile of broken concrete. One of the children, who was permitted to testify at trial, heard the little boy scream and, looking round, saw him standing on the pile with his clothes aflame. A neighbor, attracted by the screams, put out the flames and rushed the boy to a nearby hospital where his burns required him to be kept for about a year for treatment. Except for loss of weight and strength and scars from the burns, the boy was all right at trial according to his mother. In any event, the trial of the case did not proceed far enough to call for medical testimony.

On the question of the defendants' liability, the plaintiffs sought to bring the case within the rule set forth in §339 of the Restatement, Torts, which is law in this State. In *Bartleson v. Glen Alden Coal Company,* 361 Pa. 519, 529, 64 A. 2d 846, Mr. Justice LINN said for this court,—"To the extent that past cases are in conflict with the view of section 339 of the *Restatement of the Law of Torts,* which we have adopted, they are no longer authority. See Patterson et al. v. Palley Mfg. Co. et al., 360 Pa. 259, 265, 61 A. 2d 861, 864 (1948)." See also *Allen v. Silverman,* 355 Pa. 471, 474, 50 A. 2d 275; *Altenbach v. Lehigh Valley Railroad Company,* 349 Pa. 272, 275-276, 37 A. 2d 429; and *Thompson v. Reading Company,* 343 Pa. 585, 590-591, 23 A. 2d 729. The question here is whether the evidence adduced by the plaintiffs at trial brought the case within §339 of the Restatement, Torts. We think not.

§339 provides that "A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein." The appellants contend that the evidence adduced at trial supplies all of the foregoing conditions and, consequently, made out a prima facie case of the defendants' liability.

The contention, if adopted, would extend the rule set forth in §339 of the Restatement, Torts, beyond the reasonable limits of its intended import. Appellants' counsel has not cited us any case that goes as far as he would now have us go. The artificial condition on an owner's land on account of which he may be liable for injury to trespassing young children is such as *he* creates or maintains. That, of course, does not necessarily mean that an owner may not be said to maintain such a condition on his land which another has created but which the owner allows to exist. The defendants cannot rightly be thought of as having *maintained* sporadic fires on their land started by trespassing children to the detriment of the owners' goods or property. Nor does the fact that the lumber had been damaged by fire to some extent before the owners brought it upon the premises make the case any different. §339 embodies the modern concept which "limits [an owner's] unrestricted use of land in the interest of safeguarding children from the danger of serious injury" (*Bartleson v. Glen Alden Coal Company,* supra, at p. 527). But, the rule was not intended to impose upon an owner of land the duty of policing the conduct of trespassing young children against dangers of their own creation and *not related to or inhering in the artificial conditions which the owner maintains* upon his land. The beneficent purpose of the rule will not be subserved by stretching it to the breaking point through an overextended application out of a natural sympathy for a lamentable and most unfortunate injury to a child of very tender years.

The appellants also complain of the trial judge's refusal to permit John Gallagher, Jr., the minor plaintiff's brother, to testify because of his youth. John was slightly under six years old at the time of the accident and nine at the time of trial. However, no exception was taken to the court's ruling in such regard. Conse-

quently, it is not reviewable here: *Beal v. Atlantic States Motor Lines*, 348 Pa. 503, 504, 35 A. 2d 298. As no offer was made of what the proposed witness's testimony would show, we are not informed as to its purpose. But, judging from the testimony of another witness for the plaintiff, it is likely that John's testimony would have been only cumulative of particulars which we deem legally insufficient to establish liability on the part of the defendants. It otherwise appears that John had been at the scene of the bonfire and had moved on to another part of the lot shortly before his brother's clothing caught fire. Presumably, the exclusion of the witness did not do the plaintiffs any substantial harm which makes the failure to except to the trial judge's ruling the less important.

Judgments affirmed.