**Warren A. TAYLOR, Administrator of the Estate of Gerald Vaska, Deceased, Appellant,**

v.

**ALASKA RIVERS NAVIGATION CO., Appellee.**

**No. 323.**

Supreme Court of Alaska.

April 8, 1964.

Warren A. Taylor, Taylor & Bullerwell, Fairbanks, for appellant.

Charles J. Clasby, Collins & Clasby, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

This is an action for damages arising from the death of a five year old boy. The issue to be decided here is whether the trial court erred in dismissing the action at the close of appellant's case.

On September 14, 1957 the appellee moored a tug and two barges at the village

of Aniak on the Kuskokwim River. One of the barges, the Ho Ho Litna, is a decked barge on which there is a warehouse type superstructure for the storage of cargo. The barge is about 120 feet long and the superstructure covers nearly all of the barge, leaving a walkway on the sides and an open deck fore and aft. The arrival of the barges was a big event at Aniak and the villagers, both child and adult, usually went to the riverbank to watch the landing and the unloading of cargo.

After the Ho Ho Litna had discharged its cargo it was pushed upstream to clear the loading platform so that the second barge could be unloaded. The Ho Ho Litna was secured with a bow line attached to a deadman on the upshore bank of the river and a plank was left extended over the forward end of the barge to the shore. A heavy wooden cargo pallet, about 4 by 8 feet in size, had been left on the forward deck of the barge, and according to the testimony of three children it was leaning either against the bow line stanchion or partly against the stanchion and partly against the superstructure.

At about 3:00 p. m. three boys between the ages of seven and eight years boarded the barge via the plank running from the barge to the shore. They were followed by the decedent, Gerald Vaska, five years old, although they had warned him not to come aboard. Two of the boys were exploring the cargo house superstructure. The third boy, Leonard Venus, was standing in the doorway when he heard something fall. He turned and discovered Gerald lying on the deck with the cargo pallet on his head. Leonard tried to remove the pallet but it was too heavy and he called the others to help him. After the pallet was removed, the decedent whose head was bloody, moaned and struggled as if he could not catch his breath. The three

boys became frightened and ran away, and did not report the accident or summon aid.

Shortly thereafter Gerald's body was discovered floating in the river. It was retrieved and artificial respiration was given until the doctor arrived. Upon examination by the doctor, it was discovered that Gerald's death was not caused by drowning but rather from intercranial damage associated with a depressed fracture of the skull.

Appellant administrator brought suit to recover damages for the death of the child. The case was tried by the court, and at the close of appellant's case appellee moved for a dismissal under Civ.R. 41(b). The motion was granted by the trial judge on the ground that under the evidence and the law decedent's fatal injury was not a result of any negligence on the part of appellee. The judge held that appellee would not be liable under the "attractive nuisance" doctrine, because there was nothing about the barge and cargo pallet that was peculiarly attractive or inherently dangerous to young children.

■ The doctrine of attractive nuisance, as originally formulated, made the occupier or possessor of land liable for conditions which were highly dangerous to a trespassing child, where there was something about the land or some object on it that enticed or allured the child into exposing himself to the dangerous condition.[1] We do not subscribe to the view that the element of enticement or allurement must exist before there can be liability to a child trespasser as Gerald Vaska was in this case. That element is significant only insofar as it bears upon the likelihood that a child would place himself in a position where injury would be likely to occur.[2] The basis for liability is to be found in ordinary negligence law, that is,

1. Keffe v. Milwaukee & St. Paul R. R., 21 Minn. 207, 18 Am.Rep. 393 (1875); Prosser, Torts § 76, at 438–440 (1955); Harper & James, Torts § 27.5, at 1449–1450 (1956).

2. Verrichia v. Society DI M. S. Del Lazio, 366 Pa. 629, 79 A.2d 237, 238 (1951); Thompson v. Reading Co., 343 Pa. 585, 23 A.2d 729, 732 (1942).

the duty of a defendant to take reasonable care against a child's foreseeable conduct, a breach of that duty, and resulting injury. The rule of law which we adopt for this state, and which will govern disposition of this case, is the rule which was formulated in 1934 in section 339 of the Restatement of Torts, with the revisions recommended by Dean Prosser in his study and treatment of the subject in 1959.[3] That rule, which was adopted by the Oregon Supreme Court in 1960,[4] provides as follows:

> " 'A possessor of land or a chattel is subject to liability for physical harm to children trespassing thereon, caused by a condition of the land or chattel, if
>
> " '(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
>
> " '(b) the condition is one of which the possessor knows or has reason to know, and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
>
> " '(c) the children because of their youth do not discover the conditions or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and
>
> " '(d) the utility of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
>
> " '(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.' "

■ Applying this rule to the facts brought out by appellant's evidence, we believe that appellant established a prima facie case of liability on appellee's part. The arrival of the barge at the remote village of Aniak was an infrequent and exciting event. Practically the whole village would go down to the bank of the Kuskokwim River to see the barge come in and the discharge of cargo. Nearly all of the children would be there, and in fact would be let out of school for the occasion. Considering the well known propensity of little children to see at first hand and explore something that was exciting and unusual, the circumstances justify an inference that appellee knew or had reason to know of the likelihood that children would attempt to get on the barge if it were accessible to them.

The evidence showed that a plank had been left extending from the barge to the shore; that a heavy cargo pallet, 4 by 8 feet in size, had been placed upright on one edge, leaning against either the bow line stanchion or with one side against the stanchion and the other side against the superstructure; and that decedent was found lying on the deck of the barge with the pallet on his head. From these facts it would be fair to infer that the cargo pallet was balanced in such a manner that it would fall if disturbed by a young child; that it was large and heavy enough to harm a child if it fell on him; and that appellee had reason to know of these conditions since the existence of the plank and the manner in which the pallet had been left on the deck of the barge were readily apparent to any observer. These inferences would import realization on the part of appellee, or a duty to realize, that there was an unreasonable risk of harm to little children.

It would also be fair to infer that a five year old child would not be fully aware that the pallet was balanced in such a manner that it would fall if disturbed, and therefore that decedent would not understand and appreciate the danger involved. Since the barge had been unloaded and pushed upstream, further justifiable inferences would be that any utility to appellee in leaving a plank from shore to the barge and in leaving the cargo pallet balanced on

---

3. Prosser, Trespassing Children, 47 Calif. L.Rev. 427 (1959).

4. Pocholec v. Giustina, 224 Or. 245, 355 P.2d 1104, 1107–1108 (1960).

edge was extremely slight in comparison to the risk that a trespassing child would be injured; that there would have been virtually no burden on appellee in removing the means of access to the barge and in placing the pallet in a more secure position; and that appellee's failure to take such precautions was a lack of reasonable care which was the cause of decedent's fatal injury.

We do not hold that the unimpeached evidence produced by appellant compels an inference that appellee was liable for decedent's death. But we do hold that to a reasonable mind such an inference was justified at the close of appellant's case. At that point appellant had established a prima facie case of liability. The trial judge ought to have declined to dismiss the action until he had heard both sides of the case.[5]

The judgment is reversed and the case is remanded for the purpose of completing the trial.

---

5. Trusty v. Jones, 369 P.2d 420, 422 (Alaska 1962); Rogge v. Weaver, 368 P.2d 810, 813 (Alaska 1962).